ORIGINAL

FILED

07 NOV -5 PH 4: 09

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

1  ROSS, DIXON & BELL, LLP
   Jason S. Hartley (192514)
2  Jason M. Lindner (211451)
   550 West B Street, Suite 400
3  San Diego, CA 92101-3599
   Telephone:    (619) 235-4040
4  Facsimile:    (619) 231-8796

5  GOLDMAN, SCARLOTO & KARON, P.C.
   Daniel Karon (OH State Bar No. 0069304)
6  55 Public Square
   Suite 1500
7  Cleveland, OH 44113
   Telephone:    (216) 622-1851
8  Facsimile:    (216) 622-1852

9  [Additional Co-Counsel on Signature Page]

10  Attorneys for Plaintiff

11
                    UNITED STATES DISTRICT COURT
12
                   SOUTHERN DISTRICT OF CALIFORNIA
13
14                        '07 CV  2118  W (BLM)

| | |
|---|---|
| FREEMAN INDUSTRIES, LLC on behalf of itself and all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>Arkansas Best Corp.; ABF Freight Systems, Inc.; Averitt Express; Con-Way, Inc.; Con-Way Freight, Inc.; FedEx Corp.; FedEx Freight Corp.; Jevic Transportation, Inc.; New England Motor Freight Inc.; Old Dominion Freight Line, Inc.; R+L Carriers Inc.; SAIA Inc.; SAIA Motor Freight Line LLC; United Parcel Service, Inc.; YRC Worldwide Inc.,<br><br>Defendants | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

24        Plaintiff, FREEMAN INDUSTRIES, LLC ("Plaintiff"), on behalf of itself and those

25  similarly situated, brings this action for damages and injunctive relief under the antitrust laws of

26  the United States against Defendants, demand a trial by jury and based upon information and

27  belief and the investigation of counsel, except for information based on personal knowledge,

28  allege as follows:

ROSS, DIXON & BELL, LLP
550 WEST B STREET, SUITE 400
SAN DIEGO, CA 92101-3599

647594 v 2

## NATURE OF THE ACTION

1.      Beginning June 2003 or earlier, and continuing into the present, the defendant trucking companies have conspired to fix "fuel surcharges" for less-than-truckload truck shipments ("LTL"). Pursuant to Rules 23(a), 23(b) and 23(b)(3) of the Federal Rules of Civil Procedure, plaintiff seeks treble damages, injunctive relief, attorneys' fees and costs under the antitrust laws of the United States on behalf of themselves and all others similarly situated.

2.      This action is instituted under §§4 and 16 of the Clayton Act, 15 U.S.C. §§15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, against defendants for the injuries sustained by plaintiff and the members of the Classes (defined herein) by reason of the violations, as hereinafter alleged, of §1 of the Sherman Act, 15 U.S.C. §1.

3.      This action is also instituted to secure injunctive relief against defendants to prevent them from further violations of §1 of the Sherman Act, as hereinafter alleged.

## JURISDICTION

4.      This Court has diversity jurisdiction over the Classes pursuant to 28 U.S.C. §1332(d)(2) and (6) because one or more members of the Classes defined herein are citizens of a State different from one or more of the defendants and the aggregate amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs.

5.      Jurisdiction is further conferred upon this Court by 28 U.S.C. §§1331 and 1337 and by §§4 and 16 of the Clayton Act, 15 U.S.C. §§15 and 26.

6.      Venue is found in this district pursuant to §§4, 12 and 16 of the Clayton Act, 15 U.S.C. §§15, 22 and 26 and 28 U.S.C. §1391(b), (c) and (d). Venue is proper in this judicial district because plaintiff reside in this district and during the Class Period one or more of the defendants resided, transacted business, was found, or had agents in this district and a substantial portion of the affected interstate trade and commerce described below has been carried out in, this district.

7.      Defendants maintain offices, have agents, transact business, or are found within this judicial district.

8.      This Court has *in personam* jurisdiction over each of the defendants because, *inter*

1  *alia,* each defendant: (a) transacted business in the United States; (b) directly sold substantial

2  quantities of LTL services throughout the United States; (c) had substantial aggregate contacts

3  with the United States as a whole; and/or (d) was engaged in an illegal price-fixing conspiracy

4  that was directed at, and had the intended effect of causing injury to, persons and entities residing

5  in, located in, or doing business throughout the United States, including in this district. Further

6  jurisdictional facts as to certain foreign defendants are alleged below.

7  **DEFINITIONS**

8      9.    As used herein, the term:

9          (a)    "LTL," short for "less than truckload," means the service of providing

10  freight shipment, for carriage by truck, when the freight to be shipped by a customer is less than

11  one truckload;

12          (b)    "Person" means any individual, partnership, corporation, association or

13  other business or legal entity; and

14          (c)    "Class Period" refers to the period from at least July 30, 2003, through the

15  conclusion of the trial in this matter.

16      10.    Plaintiff brings this action on behalf of itself and the members of the Damages

17  Class comprising:

18      All persons or entities who paid a "fuel surcharge" on LTL service directly

19      to defendants or their unnamed co-conspirators from July 30, 2003 through the

20      conclusion of the trial in this matter. Excluded from the Class are federal

21      government entities, the defendants, their co-conspirators and their respective

22      parents, subsidiaries and affiliates.

23      11.    Plaintiff further brings this action on behalf of itself and the members of the

24  Injunctive Relief Class comprising:

25      All persons or entities who purchase LTL services directly or indirectly

26      from defendants or their unnamed co-conspirators. Excluded from the Class are

27      federal government entities, the defendants, their co-conspirators and their

28      respective parents, subsidiaries and affiliates.

12.    The market definition in this action is the market for LTL service for shipments wholly within North America and originating and/or terminating in the United States. LTL shipments nearly always weigh between 300 and 10,000 lbs. Excluded from this market definition are the markets for shipments requiring at least one full truck, small package shipments, shipment of furniture and personal affects by persons moving from one house to another, intermodal shipments, and shipments for carriage by air, water, or train.

**PARTIES**

13.    Plaintiff Freeman Industries, LLC is a New York company with its principal place of business in Tuckahoe, New York. Plaintiff purchased LTL services directly from one or more of the defendants including, but not limited to, New England Motor Freight, Inc. during the Class Period, and paid a collusively set and imposed "fuel surcharge." The prices that Plaintiff paid defendants and/or their co-conspirators for LTL services were greater than they would have been absent the conspiracy herein alleged resulting in injury to Plaintiff's business and property.

14.    Defendant Arkansas Best Corporation ("ABF") is a trucking conglomerate incorporated in Delaware offering LTL services under a variety of business names and wholly-owned alter-ego subsidiaries, including ABF, ABF Freight System, ABF Freight System Canada, ABF Cartage, Land-Marine Cargo, and FreightValue, Inc. ABF's headquarters are at 3801 Old Greenwood Road, Fort Smith, Arkansas 72903.

15.    Defendant Averitt Express ("AE") is a privately-held LTL company incorporated in Tennessee with most of its operations concentrated in the southeastern United States, and additional operations in selected cities outside this region, such as Long Beach, California. AB's headquarters are at Perimeter Place One, 1415 Neal Street, Cookeville, Tennessee 38502.

16.    Defendant Con-way, Inc. ("CW") provides LTL service, as well as truckload brokerage, airfreight forwarding, region asset based truckload service, transportation consulting, and assembly and distribution logistics programs for business-to-business supply cycle management. CW is incorporated in Delaware and has its headquarters at 2855 Campus Drive, Suite 300, San Mateo, California 94403.

17.    Defendant FedEx Corporation ("FedEx") provides packaging shipping and freight

1  services, including LTL service, and operates FedEx Kinko's, among other business lines. FedEx

2  is a Delaware corporation with its principal place of business in California. FedEx's headquarters

3  are located at 942 South Shady Grove Road, Memphis, Tennessee 38120.

4      18.    Defendant Jevic Transportation, Inc. ("Jevic") is a New Jersey corporation and

5  major regional LTL services provider focusing on the Northeastern United States. Jevic's

6  headquarters are located at 600-700 Creek Road, Delanco, New Jersey 08075.

7      19.    Defendant Sun Capital Partners IV, LLC ("Sun") is a private equity fund

8  incorporated in Delaware that purchases companies in leveraged buyouts, or LBOs. Sun

9  purchased defendant Jevic from defendant Saia, Inc. on or about July 5, 2006, shares equitable

10  ownership with Jevic and as part of and subsequent to the leveraged buyout extracted so much

11  equity from Jevic that the company currently does not have assets sufficient to pay the full claims

12  of the Damages Class. Sun's headquarters are located at 5200 Town Center Circle, Suite 470,

13  Boca Raton, Florida 33486.

14      20.    Defendant New England Motor Freight, Inc. ("NEMF") is a regional LTL

15  company incorporated in New Jersey providing service in the Northeastern United States, Eastern

16  Canada, and Puerto Rico. NEMF's headquarters are located at 1-71 North Avenue East,

17  Elizabeth, New Jersey 07201.

18      21.    Defendant Old Dominion Freight Line, Inc. ("ODFL") is a Virginia corporation

19  that derives must of its business from LTL service. ODFL's headquarters are located at 500 Old

20  Dominion Way, Thomasville, North Carolina 27360.

21      22.    Defendant R+L Carriers, Inc. ("RLC") is a privately-held LTL company,

22  incorporated in Ohio, with operations in 45 states, Canada, and Puerto Rico. RLC operates under

23  its own name and under the names R+L Transfer, Gator Freightways, Greenwood Motor Lines,

24  and Paramount Transportation. RLC's headquarters are located at 600 Gillam Road, Wilmington,

25  Ohio 45177.

26      23.    Defendant Saia, Inc. ("Saia") is an LTL company incorporated in Delaware with

27  annual revenues exceeding $875 million. Saia's headquarters are located at 11465 Johns Creek

28  Parkway, Suite 400, Duluth, Georgia 30097.

24. Defendant United Parcel Service, Inc. ("UPS") is a freight, package delivery, and supply chain management company incorporated in Delaware. UPS's headquarters are located at 55 Glenlake Parkway, NE, Atlanta, Georgia 30328. UPS entered the LTL market by acquiring the assets of Overnite Transportation Company, then one of the largest LTL companies operating in the United States.

25. Defendant YRC Worldwide Inc. ("YRC") is a large trucking company incorporated in Delaware providing LTL service and other freight services using its own name and several other brands. YRC's headquarters are located at 10990 Roe Avenue, Overland Park, Kansas 66211.

## FACTS

26. LTL services are used by plaintiff and members of the Classes as a means to transport freight within North America by ground. Plaintiff estimates, based on articles in trucking industry trade journals, total domestic LTL industry revenue ranged from $25 to $35 billion annually during the Class Period.

27. A number of structural characteristics of the LTL industry facilitate the implementation and maintenance of horizontal price-fixing:

(a)     LTL services are a commodity product that are fungible in the sense that LTL services provided by any defendant are substitutable for the LTL services provided by any other defendant. LTL services are homogenous services sold by defendants and purchased by plaintiff and members of the Class primarily on the basis of price.

(b)     Demand for LTL services is imperfectly inelastic, meaning the gains from collusion are substantial.

(c)     The LTL service industry in the United States is highly concentrated, facilitating coordination of prices. During the Class Period, defendants possessed a combined United States market share exceeding 75%.

(d)     There are substantial barriers to entry in the LTL industry requiring substantial time, resources, and industry knowledge to even potentially overcome. Viable entry requires the purchase or lease of hundreds of trucks and dozens of truck depots.

1    Similarly, viable entry requires that a new provider capture a significant market share

2    from existing providers. Thus, entry is both expensive and risky. Entry is further restricted

3    by the tight labor market for truck drivers. Current market participants face significant

4    driver shortages. A potential competitor's entry into the market also would require

5    significant advertising expenses in order to build a recognized brand name.

6        (e)    Even for potential shipping experts who possess the capital and know how

7    to possibly enter the market, viable entry takes a longtime. When package shipping

8    leaders FedEx and UPS decided to enter the LTL market, they purchased and rebranded

9    existing LTL companies rather than attempting to enter the market directly.

10        (f)    LTL services are a nondurable product. Unlike some industries, shippers

11    cannot "stock up" on LTL service when prices are low and use this stockpile when

12    shipping prices are high.

13        (g)    The cartel members all sell at the level of distribution as horizontal

14    competitors.

15        (h)    Price is the most important competitive factor in LTL shipping, and the

16    standardized nature of LTL shipping services hinders substantial and material non-price

17    competition.

18        (i)    The firms have a similar cost structure. In the LTL industry there is a high

19    ratio of fixed to variable costs. Capital equipment, software, advertising, depot purchase

20    or lease, driver recruitment and trailing, and other capital costs are high relative to

21    variable costs. None of the defendants are greatly more efficient than the industry average.

22        (j)    Newer industries are typically characterized by rapid growth, innovation,

23    and high profits. The LTL industry is a mature one, and like many mature industries, is

24    characterized by slim profit margins, creating a motivation to collude.

25        (k)    The industry has a history of "cooperation." For example, several regional

26    LTL companies have formed alliances with other regional LTL companies, under the

27    claimed purpose of allowing nationwide service, but in fact with many more companies

28    than would be required to offer such services. The level of cooperation within the trucking

1  industry is higher than in similar industries, and has created a level of trust within the
2  industry that has facilitated defendants' collusion.

3          (l)      The LTL industry has become increasingly concentrated. For example, in
4  2003 defendant YRC, then operating under the names Yellow, Freight System and Yellow
5  Transportation, merged with Roadway, then one of the largest LTL companies. The
6  combined Yellow/Roadway entity then merged in 2005 with USF, another major LTL
7  company, further increasing LTL market concentration.

8          (m)     Defendants are able to match each others' prices through publication of
9  prices, and because defendants frequently use identical pricing software.

10         (n)      During discussions of mergers and states of assets from one defendant to
11 another, defendants exchange non-public competitively sensitive financial information,
12 periodically allowing them to audit and gauge their co-conspirators' compliance in
13 imposing supracompetitive "fuel surcharges."

14 28.     Fuel cost is the single substantial variable defendants must cover that is subject to
15 wide variation in price. When a company's variable costs increase, without a concomitant
16 offsetting increase in demand, the profits of the company will decrease as the company can only
17 pass on a portion of the cost increase to its customers.

18 29.     Beginning in 2003, defendants, facing drastically increased fuel costs and the
19 likelihood of lower profits, have evaded this basic economic law by collusively imposing on their
20 customers what are claimed to be "fuel surcharges," but which in fact have little relation to the
21 increase in their fuel costs. Higher fuel costs in fact were merely the pretext and an opportunity
22 for defendants to agree among themselves to impose collusive "fuel surcharges."

23 30.     Observers of the LTL industry, and indeed some of the defendants themselves,
24 have noted the direct relationship between high fuel prices and LTL profits. By way of example:

25         (a)      A 2006 article in *Traffic World,* a weekly trade publication covering the
26 transportation and logistics industry, quoted Ken Hazen, president of transportation
27 software and freight payment firm CTSI, as describing fuel surcharges as "a profit center
28 now.... Carriers are in control. They're in the catbird seat." He noted that "many carriers

locked in their fuel costs at a set price and are now profiting from surcharges and tight capacity."

(b)     A transportation industry analyst at Bear Stems noted that: "Our sense is that generally the LTL carriers make money on fuel surcharges and that earnings for LTL providers would be hurt by sustained lower fuel costs."

(c)     A 2005 article in *Fleet Owner,* a trade magazine for executives and managers of commercial trucking fleets, noted that in the past increased fuel prices were harmful to the LTL industry, but had become profitable during the recent period of increased prices: "High diesel fuel prices usually signal harsh times for trucking    That doesn't seem to be the case this year."

(d)     Defendant ODFL frankly admitted in its 2006 annual report that higher fuel prices increase its profitability, and lower fuel prices decrease its profitability: "A rapid and significant decrease in diesel fuel prices would likely reduce our revenue and operating income until we revised our pricing strategy to reflect these changes."

(e)     Defendant YRC also made this admission: "In general, under our present fuel surcharge program, we believe rising fuel costs are beneficial to us in the short term."

(f)     As did defendant ABF:

As diesel fuel prices decline, the fuel surcharge and associated direct diesel fuel costs also decline by different degrees. Depending upon the rates of these declines and the impact on costs in other fuel and energy-related areas, operating margins could be negatively impacted.

(g)     Defendant FedEx Freight's president and CEO, Douglas G. Duncan, has stated "Thank God for the fuel surcharge," in relation to its success in obtaining rate increases.

31.     These admissions are in marked contrast to the domestic passenger airline industry. For example, Southwest Airlines noted:

The cost of fuel, which was at an historically high level over the last two years, is largely unpredictable and has a significant impact on the Company's results of

1    operations....

2              Due to the competitive nature of the airline industry, the Company's ability to

3    increase fares is limited....

4    32.    United Airlines made the same observation:

5              At times, United has not been able to increase its fares when fuel prices have risen

6    due to the highly competitive nature of the airline industry, and it may not be able to do so

7    in the future....

8                                              * * *

9              Higher fuel costs have had a significantly adverse effect on the Company's

10   operating expenses in 2006 as compared to 2005.

11   33.    On December 15, 2004, the *International Herald Tribune* published an article

12   headlined "Fuel costs wipe out airline profit despite travel rebound." The article noted:

13             The airline industry is experiencing huge growth worldwide, in a recovery from

14   several rough years after the Sept. 11, 2001, terrorist attacks and regional problems like

15   severe acute respiratory syndrome, or SARS. But the escalation in fuel prices produced

16   another huge loss for the industry this year....

17                    **OPERATION OF THE PRICE-FIXING CARTEL**

18   34.    When fuel prices began increasing in the early 2000s, LTL companies began

19   imposing increasingly high "fuel surcharges." These "fuel surcharges" were not set by the rate-

20   setting organizations, and thus are beyond the scope of their former limited antitrust immunity.

21   35.    Defendants agreed to impose identical or nearly identical "fuel surcharges" by

22   agreeing to tie the "fuel surcharges" to an index of diesel fuel prices published to the public by

23   the United States Department of Energy ('Fuel Index"). Further, in order to communicate

24   movement pricing and to police the cartel, each of the defendants lists its fuel surcharges in their

25   Web sites. As a result, defendants' "fuel surcharges" move in lockstep, as illustrated in the

26   following chart showing the fuel surcharges of each defendant at different Fuel Index levels:

27

28

| Diesel Fuel $/Gallon | ABF | AE | CW | FedEx Freight | Jevic | ODFL | RLC | Saia | UPS | YRC |
|---|---|---|---|---|---|---|---|---|---|---|
| 1.80 | 8.9% | 8.9% | 9.0% | 8.9% | 8.9% | 8.5% | 8.9% | 8.9% | 8.9% | 8.9% |
| 2.00 | 10.9% | 10.8% | 10.9% | 10.9% | 10.9% | 10.5% | 10.9% | 10.9% | 10.9% | 10.9% |
| 2.20 | 12.9% | 12.9% | 12.9% | 12.9% | 13.0% | 12.5% | 12.9% | 12.9% | 12.9% | 12,9% |
| 2.40 | 14.9% | 14.9% | 14.9% | 14.9% | 15.0% | 14.5% | 14.9% | 14.9% | 14.9% | 14.9% |
| 2.60 | 16.9% | 16.9% | 16.9% | 16.9% | 17.0% | 16.5% | 16.9% | 16.9% | 16.9% | 16.9% |
| 2.80 | 18.9% | 18.9% | 18.9% | 18.9% | 19.0% | 18.5% | 18.9% | 18.9% | 18.9% | 18.9% |
| 3.00 | 20.9% | 20.9% | 20.9% | 20.9% | 21.0% | 20.5% | 20.9% | 20.9% | 20.9% | 20.9% |
| 3.20 | 22.9% | 22.9% | 22.9% | 21.9% | 23.0% | 22.5% | 21.9% | 22.9% | 22.9% | 22.9% |
| 3.40 | 24.9% | 24.9% | 24.9% | 22.9% | 25.0% | 24.5% | 22.9% | 24.9% | 24.9% | 24.9% |
| 3.60 | 26.9% | 26.9% | 26.9% | 23.9% | 27.0% | 26.5% | 23.9% | 26.9% | 26.9% | 26.9% |

36.     Recently the Fuel Index was near $3.00. At that price, defendants charged a "fuel surcharge" of 20.5%, 20.9%, 20.9%, 20.9%, 20.9%, 20.9%, 20.9%, 20.9%, 20.9%, and 21.0%.

37.     The amount of the "fuel surcharge" imposed by the LTL companies on shipping orders exceeds the entire cost of fuel for delivering the freight of most customers, and vastly exceeds the increase in fuel prices since the "fuel surcharge" was imposed.

38.     For example, FedEx noted that for FedEx Freight, its LTL service: "While fuel costs increased substantially in 2006, fuel surcharges more than offset the effect of higher fuel costs…" Similarly, CW states: "As fuel prices have risen, the fuel surcharge has increased Con-way Freight's yields and revenue, and Con-way Freight has more than recovered higher fuel costs and fuel-related increases in purchased transportation."

## EFFECTS

39.     The unlawful contract, combination or conspiracy alleged above had, *inter alia,* the following effects:

(a)     Prices charged by defendants and their co-conspirators to plaintiff and the members of the Classes for LTL services were maintained at artificially high and noncompetitive levels; and

(b)     Plaintiff and members of the Classes were required to pay more for LTL services than they would have paid in a competitive marketplace unfettered by defendants' and their co-conspirators' collusive and unlawful price-fixing.

40.     During and throughout the period of the contract, combination or conspiracy alleged above, plaintiff and members of the Damages Class directly purchased LTL services in the United States.

41.     Plaintiff and the other Damages Class members paid more for the LTL than they would have paid under conditions of free and open competition.

42.     As a direct and proximate result of the illegal combination, contract or conspiracy alleged above, plaintiff and the members of the Damages Class were injured and financially damaged in their businesses and property, in amounts that are not presently determinable but in excess of the amount necessary for the jurisdiction of this Court.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

44.     Plaintiff brings this action on its own behalf and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the Classes.

45.     Plaintiff believes the members of the Classes number in the thousands, the exact number and identities being known only by defendants.

46.     The members of the Classes are so numerous and geographically dispersed that joinder of all members is impracticable.

47.     There are questions of law and fact common to the Classes. These common questions relate to the existence of the conspiracy alleged, and to the type and common pattern of injury sustained as a result thereof. The questions include but are not limited to:

49.     Plaintiff is a member of both Classes.

(a)    Whether defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize fuel surcharges imposed for LTL services sold in the United States;

(b)    The identity of participants in the conspiracy;

(c)    The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by defendants and their co-conspirators in furtherance of the conspiracy;

(d)    Whether the alleged conspiracy violated §1 of the Sherman Act;

(e)    Whether the conduct of defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of plaintiff and other members of the Classes;

(f)    The effect of defendants' conspiracy on the prices of LTL services sold in the United States during the Class Period; and

(g)    The appropriate measure of damages sustained by plaintiff and other members of the Damages Class.

Plaintiff's claims are typical of the claims of other members of the Classes, and plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff paid "fuel surcharges" for LTL services directly to defendants. Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Classes. In addition, plaintiff is represented by competent counsel experienced in the prosecution of antitrust and class action litigation.

48.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for defendants.

49.    Defendants have acted, and refused to act, on grounds generally applicable to the Injunctive Relief Class, thereby making appropriate final injunctive relief with respect to this entire Class.

50.    The questions of law and fact common to the members of the Classes predominate

1    over any questions affecting only individual members, including legal and factual issues relating

2    to liability and damages.

3        51.    A class action is superior to other available methods for the fair and efficient

4    adjudication of this controversy. The Classes are readily definable from records in the files of

5    defendants and their co-conspirators. Prosecution as a class action will eliminate the possibility of

6    repetitious litigation. Treatment as a class action will permit a large number of similarly situated

7    persons to adjudicate their common claims in a single forum simultaneously, efficiently and

8    without the duplication of effort and expense that numerous individual actions would engender.

9    Class treatment will also permit the adjudication of relatively small claims by members of the

10   Classes who otherwise could not afford to litigate an antitrust claim such as is asserted in this

11   Complaint. This class action presents no difficulties of management that would preclude its

12   maintenance as a class action.

13                   **FIRST CLAIM FOR RELIEF**

14                **(For Violation of 15 U.S.C. §1)**

15       52.    Plaintiff realleges and incorporate each and every allegation set forth above as if

16   fully written herein.

17       53.    From a date unknown, but at least from July 30, 2003, and continuing through the

18   present, defendants and their co-conspirators have combined, conspired and/or contracted to

19   restrain interstate trade in violations of 15 U.S.C. §1.

20       54.    In furtherance of the unlawful conspiracy, upon information and belief, each of the

21   defendants and their co-conspirators has committed overt acts, including, inter alia:

22           (a)    agreeing to charge prices at certain levels and otherwise to fix, increase,

23   maintain or stabilize prices of fuel surcharges of LTL services sold in the United States;

24           (b)    communicating with co-conspirators regarding prices to be charged for

25   LTL "fuel surcharge" services;

26           (c)    meeting with co-conspirators in order to keep the existence of the

27   conspiracy unknown so as to foster the illegal anti-competitive conduct described herein;

28   and

ROSS, DIXON & BELL, LLP
550 WEST B STREET, SUITE 400
SAN DIEGO, CA 92101-3599

647594 v 2    - 14 -

1          (d)    refraining from competition by refusing to offer fuel surcharges and LTL

2   services at prices below the agreed-upon fixed price.

3         55.    Defendants and their co-conspirators engaged in the activities described above for

4   the purpose of effectuating unlawful arrangements to fix, maintain, raise and/or stabilize prices of

5   fuel surcharges on LTL services.

6         56.    Defendants' anti-competitive agreement was implemented by, *inter alia,*

7   instituting surcharges calculated by reference to publicly published indices. These coordinated

8   price increases continued on a regular basis through the present, with the actual and intended

9   result that plaintiff and members of the Classes paid supracompetitive prices for fuel surcharges

10   on LTL services. Defendants falsely attributed these price increases to the cost of fuel. As a direct

11   and proximate result of the fuel surcharges on LTL price-fixing conspiracy, defendants have

12   restrained competition in the LTL market and injured plaintiff and each Damages Class member

13   in their business and property in that they have each paid a higher price for fuel surcharges on

14   LTL services than they would have paid absent the concerted unlawful activity.

15         57.    The conduct of defendants and their co-conspirators constitutes a *per se* violation

16   of §1 of the Sherman Act, 15 U.S.C. §1.

17         58.    In the alternative, the conduct of defendants and their co-conspirators is a rule of

18   reason violation of §1 of the Sherman Act, 15 U.S.C. §1 given there is no legitimate business or

19   pro-competitive justification for the actions complained of herein.

20                         **SECOND CLAIM FOR RELIEF**

21                 **(Violation of the California Cartwright Act)**

22         59.    Plaintiff incorporates and realleges each and every allegation set forth in the

23   preceding paragraphs of this Complaint.

24         60.    Defendants' contract, combination, trust, or conspiracy was centered in, carried

25   out, effectuated, and perfected mainly within the State of California, and Defendants' conduct

26   within California injured all members of the Classes throughout the United States. Therefore, this

27   claim for relief under California law is brought on behalf of all members of the Classes.

28         61.    Beginning at least as early as July 30, 2003, and continuing thereafter up to the

1    present, Defendants and their co-conspirator(s) entered into and engaged in a continuing unlawful

2    trust in restraint of trade and commerce described above in violation of Section 16720, California

3    Business and Professions Code to fix, raise stabilize, and maintain prices of LTL services at

4    supra-competitive levels.

5    　　　　62.    The violations of Section 16720, California Business and Professions Code,

6    consisted, without limitation, of a continuing unlawful trust and concert of action among the

7    Defendants and their co-conspirator(s), the substantial terms of which were to fix, raise, maintain,

8    and stabilize the prices of LTL services.

9    　　　　63.    For the purpose of forming and effectuating the unlawful trust, the Defendants and

10   their co-conspirator(s) did those things which they combined and conspired to do; including but

11   in no way limited to the acts, practices, and course of conduct set forth above and to fix, raise,

12   maintain, and stabilize the price of LTL services sold to Plaintiff and the Classes.

13   　　　　64.    The combination and conspiracy alleged above has had, among other things, the

14   following effects:

15   　　　　　a.    price, competition in the sale of LTL services was restrained, suppressed and/or

16   　　　　　　　　eliminated in the State of California and throughout the United States;

17   　　　　　b.    prices for LTL services sold by Defendants and their co-conspirator(s) were fixed,

18   　　　　　　　　raised, maintained, and stabilized at artificially high, non-competitive levels in the

19   　　　　　　　　State of California and throughout the United States; and

20   　　　　　c.    those who purchased LTL services from Defendants and their co-conspirator(s)

21   　　　　　　　　were deprived of the benefit of free and open competition.

22   　　　　65.    Plaintiff and the other members of the Classes paid supra-competitive, artificially

23   inflated prices for LTL services.

24   　　　　66.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the

25   members of the Damages Class were injured in their business and property in that they paid more

26   for less than truckload services than they otherwise would have paid in the absence of

27   Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the

28   California Business and Professions Code, Plaintiff seeks treble damages and the costs of suit,

1    including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and

2    Professions Code.

3                              **THIRD CLAIM FOR RELIEF**

4                  **(Violations of the California Unfair Competition Law)**

5         67.    Plaintiff incorporates and realleges each and every allegation set forth in the

6    preceding paragraphs of this Complaint.

7         68.    Defendants' business acts and practices were centered in, carried out, effectuated,

8    and perfected mainly within the State of California, and Defendants' conduct within California

9    injured all members of the Classes. Therefore, this claim for relief under California law is brought

10   on behalf of all members of the Classes.

11        69.    Beginning as early as July 30, 2003, and continuing thereafter up to the present,

12   Defendants committed and continued to commit acts of unfair competition, as defined by Section

13   17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and

14   practices specified above.

15        70.    This Claim is instituted pursuant to Sections 17203 and 17204 of the California

16   Business and Professions Code, to obtain restitution from Defendants for acts that violated

17   Section 17200, *et seq.* of the California Business and Professions commonly known as the Unfair

18   Competition Law.

19        71.    Defendants' conduct as alleged in this Complaint violated Section 17200, *et seq.*

20   The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants, as alleged

21   in this Complaint, constituted a common continuous and continuing course of conduct of unfair

22   competition by means of unfair, unlawful and/or fraudulent business acts or practices within the

23   meaning of California Business and Professions Code, Section 17200, *et seq.,* including, but not

24   limited to, the following:

25        a.    the violations of Section 1 of the Sherman Act, as set forth above;

26        b.    the violations of the California Cartwright Act, Sections 16720, *et seq.,* of the

27             California Business and Professions Code; as set forth above;

28        c.    Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as

described above, whether or not in violation of Sections 16720, *et seq.,* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful, or fraudulent,

d.    Defendants' acts and practices are unfair to consumers of LTL services in the State of California, within the meaning of Section 17200, California Business and Professions Code; and

e.    Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

72.    Plaintiff and each of the Class members are entitled to full restitution, disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such business acts or practices. , *et seq.*

73.    The unlawful and unfair business practices of Defendants, as described above, caused Plaintiff and the members of the Class to pay supra-competitive and artificially inflated prices for LTL services. Plaintiff and the members of the Classes suffered injury in fact and lost money or property as a result of such unfair competition.

74.    The conduct of Defendants as alleged in this Complaint violates Section 17200, *et seq.* of the California Business and Professions Code.

75.    As alleged in this Complaint, Defendants and their co-conspirator(s) were unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff and the members of the Classes are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such business-practices pursuant to the California Business and Professions Code, sections 17203 and 17204.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays;

A.    That the Court determine that this action may be maintained as a class action under Rule 23(a) and Rule 23(b)(1)-(3) of the Federal Rules of Civil Procedure and direct that

1 | reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil

2 | Procedure, be given to members of the Class;

3 |       B.    That the Court adjudge and decree that the contract, combination, and conspiracy

4 | alleged in this Complaint are a *per se* unreasonable restraint of trade in violation of Section 1 of

5 | the Sherman Act;

6 |       C.    That the Court adjudge and decree that the contract, combination, and conspiracy

7 | alleged in this Complaint is an unlawful combination, trust, agreement, understanding, and/or

8 | concert of action in violate the California Cartwright Act;

9 |       D.    That the Court adjudge and decree that the contract, combination, and conspiracy

10 | alleged in this Complaint to be violations of the Unfair Competition Laws;

11 |       E.    That Plaintiff and the Damages Class recover damages, as provided by the

12 | Sherman Act and the California Cartwright Act, and that a joint and several judgment in favor of

13 | Plaintiff and the Damages Class be entered against Defendants in an amount to be trebled in

14 | accordance with such laws;

15 |       F.    Defendants and their co-conspirator(s), and their respective successors, assigns,

16 | parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and

17 | employees, and all other persons acting or claiming to act on behalf of Defendants and their co-

18 | conspirator(s), or in concert with them, be permanently enjoined and restrained from, in any

19 | manner, continuing, maintaining or renewing the combinations, conspiracy, agreement,

20 | understanding or concert of action, or adopting any practice, plan, program or design having

21 | similar purpose or effect in restraining competition;

22 |       G.    That Plaintiff be awarded restitution, including disgorgement of profits obtained

23 | by Defendants as a result of its acts of unfair competition and acts of unjust enrichment;

24 |       I.    The Court award Plaintiff's and the Classes' fees and costs as provided by law;

25 |       J.    The Court award Plaintiff and the Class pre-judgment and post-judgment interest

26 | as permitted by law, and that interest be awarded at the highest legal rate from and after the date

27 | of service of the initial complaint in this action; and

28 |       K.    The Court award Plaintiff and the Classes such other and further relief as may be

1    deemed necessary and appropriate.

2                           **JURY TRIAL DEMAND**

3              Plaintiff hereby demands a jury trial.

4

5    Dated: November 5, 2007                    ROSS, DIXON & BELL, LLP

6

7                                              By: _____
                                                  Jason Hartley
8

9    McGOWAN HOOD FELDER & JOHNSON      GOLDMAN, SCARLOTO & KARON &
                                        LTD.
10   John G. Felder, Jr. (SC State Bar No. 7051)   Daniel Karon (OH State Bar No. 0069304)
     1405 Calhoun Street                55 Public Square
11   Columbia, SC 29201                 Suite 1500
     Telephone:    (803) 779-0100       Cleveland, OH 44113
12   Facsimile:    (803) 787-0750

13   SHARP McQUEEN P.A.                 EMERSON POYNTER, LLP

14   Isaac Diel                         Scott E. Poynter (AR State Bar No. 90077)
     Financial Plaza                    The Museum Center
15   6900 College Boulevard, Suite 285  500 President Clinton Avenue, Suite 305
     Overland Park, KS 66211            Little Rock, AR 72201
16   Telephone:    (913) 661-993        Telephone:    (501) 907-2555
     Facsimile:    (913) 661-9935       Facsimile:    (501) 907-2556
17

18   LANDSKRONER GRIECO MADDEN, LTD.    LAW OFFICES OF KRISHNA B. NARINE,
                                        P.C.
     Jack Landskroner (OH State Bar No 0059227)
19   1360 W. 9th Street, Suite 200      Krishna B. Narine
     Cleveland, OH 44113                26000 Philmont Avenue, Suite 324
20   Telephone:    (216) 522-9000       Huntingdon Valley, PA 19006
     Facsimile:    (216) 522-9007       Telephone:    (215) 914-2460
21                                      Facsimile:    (215) 914-2462

22

23                                      *Attorneys for Plaintiff*

24

25

26

27

28

JS 44
(Rev. 07/89)

**ORIGINAL**

**CIVIL COVER SHEET**

**FILED**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Freeman Industries, LLC, on behalf of itself and all others similarly situated | Arkansas Best Corp.; ABF Freight Systems, Inc.; Averitt Express; Con-Way, Inc.; Con-Way Freight, Inc.; FedEx Corp.; FedEx Freight Corp.; JEVIC Transportation, Inc.; New England Motor Freight Inc.; Old Dominion Freight Line, Inc.; R+L Carriers Inc.; SAIA Inc.; SAIA Motor Freight Line LLC; UPS Freight; YRC Inc.; YRC Worldwide Inc., |

| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Westchester Cty, NY <br> (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Sebastian Cty, AR <br> (IN U.S. PLAINTIFF CASES ONLY) <br> NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Ross Dixon & Bell LLP <br> 550 West B Street <br> Suite 400 <br> San Diego, CA 92101 <br> 619-235-4040 | '07 CV  2118   W (BLM) |

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)  15 U.S.C. Sec. 15 and 26 (Clayton Act); 15 U.S.C. Section 1 (Sherman Act); Calif. B&P Code Sec. 17200 (UCL); and Calif. B&P Code Sec. 16720 (Cartwright Act)

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Medical Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury — Product Liability | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Conditions | | | |

**VI. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removal from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**  ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint: JURY DEMAND: ☒ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY**  (See instructions)  JUDGE  See Attachment A hereto   Docket Number  See Attachment A

DATE  11/5/07

SIGNATURE OF ATTORNEY OF RECORD

PAID $350  11/5/07  BH  RECT# 141,194

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

## ATTACHMENT A TO CIVIL CASE COVER SHEET

|      | Case No.    | Judge          |
| ---- | ----------- | -------------- |
| 1.   | 3:07cv1389  | Roger Benitez  |
| 2.   | 3:07cv1728  | Thomas Whelan  |
| 3.   | 3:07cv1764  | Larry Burns    |
| 4.   | 3:07cv1765  | Larry Burns    |
| 5.   | 3:07cv1780  | Larry Burns    |
| 6.   | 3:07cv1812  | Jeffrey Miller |
| 7.   | 3:07cv1862  | William Hayes  |
| 8.   | 3:07cv1901  | Marilyn L. Huff |
| 9.   | 3:07cv1902  | Marilyn L. Huff |
| 10.  | 3:07cv1939  | Roger Benitez  |

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 144194    – BH
* * C O P Y * *
November 05, 2007
16:09:13**

**Civ Fil Non-Pris**
USAO #.: 07CV2118 CIVIL FILING
Judge..: THOMAS J WHELAN
Amount.:                    $350.00 CK
Check#.: BC# 37678

**Total–>   $350.00**

FROM: FREEMAN IND. V. ARK. BEST CO.
         CIVIL FILING